**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gila River Indian Community; John Doe Allottee #1; Jane Doe Allottee #2,<br><br>   Plaintiffs,<br><br>vs.<br><br>Mark Winkleman, Commissioner, Arizona State Land Department; Allen E. Clark,<br><br>   Defendants. | No. CV 05-1934-PHX-EHC<br><br>**ORDER** |

Pending before the Court is Defendant Winkleman's Motion to Dismiss. [Dkt. 13]. The Motion is fully briefed.

**Background**

This case involves a dispute "concerning rights to a 640-acre tract of land known as Section 36, Township 4 South, Range 4 East, of the Gila and Salt River Base and Meridian, Pinal County, Arizona." [Dkt. 1, p. 2]. The disputed property is allegedly part of the reservation granted to the Gila River Indian Community (hereafter, the Community). [Dkt. 1, pp. 4-5]. The Community also claims unextinguished aboriginal title in the disputed property. [Dkt. 1, p. 10]. Arizona, through its Land Department, allegedly claims the disputed property is school trust land Congress granted to Arizona. [Dkt. 1, pp. 6-9].

The Commissioner of Arizona's Land Department, Defendant Winkleman, allegedly "granted Defendant Clark a special land use permit... for the purpose of establishing apiary sites" on the disputed property. [Dkt. 1, p. 16]. Defendant Clark allegedly accesses the apiaries via roads crossing the Community's reservation and land allotted to individual members of the Community, including Plaintiffs John Doe Allottee #1 and Jane Doe Allottee #2. [Dkt. 1, pp. 16-17].

The Community fears further encroachments should Arizona's Land Commissioner designate the disputed property as "urban lands," pursuant to Ariz. Rev. Stat. § 37-331 et seq. [Dkt. 1, p. 12]. Designating the disputed property as urban lands allegedly would impede the implementation of the Community's Master Plan for Land and Water Use, required by the Gila River Indian Community Water Rights Settlement Act, 108 P.L. 451, § 204(e)(2) (1994). [Dkt. 1, p. 13-15]. The Settlement Act will only be effective if, inter alia, the Community has implemented the Master Plan by December 31, 2007. 108 P.L. 451, § 207(c)(1)(C).

Plaintiffs seek declaratory and injunctive relief against Defendants Winkleman and Clark to end their alleged encroachments and prevent future encroachments on the disputed property.

**Legal Standard**

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (citation omitted). All material allegations of the complaint must be accepted as true and in a light most favorable to Plaintiff. In re Broderbund/Learning Co. Securities Litigation, 294 F.3d 1201, 1203 (9th Cir. 2002).

**Discussion**

Defendant Winkleman argues dismissal is required because Plaintiffs' claims against him are barred by Arizona's sovereign immunity, Plaintiffs failed to join indispensable parties, and Plaintiffs aboriginal title to the property has been extinguished.

### A. Sovereign Immunity

"The Eleventh Amendment grants to states a sovereign immunity from suit." Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000). The United States Supreme Court's decision in Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908), "recognized an exception to the Eleventh Amendment bar for suits for prospective relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." Id. Here, the Young exception to the Eleventh Amendment would normally apply because Plaintiffs are suing Defendant Winkleman, a state officer, to enjoin an alleged ongoing violation of 25 U.S.C. § 177.[1] Defendant Winkleman, however, argues that the Young exception cannot apply based on Idaho v. Couer d'Alene Tribe of Idaho, 521 U.S. 261, 117 S. Ct. 2028 (1997).

In Couer d'Alene, the Supreme Court placed a narrow limitation on the applicability of the Young exception. In that case, an Indian tribe sought declaratory and injunctive relief against Idaho state officials to establish the tribe's right to quiet enjoyment of submerged lands. The Supreme Court characterized the suit as "close to the functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe" and as "seek[ing], in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State." Id., 521 U.S. at 282, 117 S. Ct. at 2040. The Supreme Court found that the relief sought by the tribe "would divest the State of its sovereign control over submerged lands, lands with a unique status

---

[1] Defendant Winkleman argues his issuance of a Special Land Use Permit allowing Defendant Clark to operate an apiary cannot constitute a violation of § 177 (prohibiting a "purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto" from a tribe unless made by a treaty) because the Permit is not a claim to land under the statute. Section 177's "overriding purpose is the protection of Indian lands. It acknowledges and guarantees the Indian tribes' right of possession." United States ex rel. Santa Ana Indian Pueblo v. University of New Mexico, 731 F.2d 703, 706 (10th Cir. 1984) (citing United States v. Southern Pacific Transportation Co., 543 F.2d 676, 698 (9th Cir. 1976)). Operation of an apiary arguably interferes with the Community's possession of the land. Such use without a treaty, therefore, may be prohibited by § 177.

1 in the law and infused with a public trust the State itself is bound to respect." Id., 521 U.S.
2 at 283, 117 S. Ct. at 2041. Based on the state's interest in the submerged lands, the Young
3 exception was inapplicable:

> It is apparent, then, that if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury. Under these particular and special circumstances, we find the Young exception inapplicable. The dignity and status of its statehood allows Idaho to rely on its Eleventh Amendment immunity.

Id., 521 U.S. at 287, 117 S. Ct. at 2043. Couer d'Alene, therefore, stands for the proposition that state sovereign immunity bars a suit against state officials for declaratory or injunctive relief that would quiet title to submerged lands in which the state has a sovereign interest.

The Ninth Circuit has interpreted Couer d'Alene in this fashion. Agua Caliente, 223 F.3d at 1045-48 (Couer d'Alene did not render the Young exception inapplicable to a suit regarding state taxation of Indian tribes). In Agua Caliente, the Ninth Circuit recognized that "[c]entral to the Court's decision [in Couer d'Alene] was the degree to which the tribe's requested relief would have invaded Idaho's unique interest in the submerged lands." Id., 223 F.3d at 1047. The Ninth Circuit found that "interpret[ing] Couer d'Alene differently would be to open a Pandora's Box as to the relative importance of various state powers or areas of state regulatory authority." Id., 223 F.3d at 1048.

Other courts have found that Couer d'Alene only limits the application of the Young exception when a state's control of submerged lands is challenged. The Second Circuit found "significant to the Court's reasoning was the fact that the Couer d'Alene Tribe's claims implicated the authority of the State of Idaho over submerged lands." Western Mohegan Tribe and Nation v. Orange County, 395 F.3d 18, 22 fn. 3 (2d Cir. 2004). In that case, the Second Circuit held that Couer d'Alene gave the state immunity because "the state parks listed as comprising portions of the Tribe's land claim contain 'submerged lands.'" Id. Recognizing the importance of submerged lands to the Couer d'Alene decision, the Tenth Circuit found that a state's interest in retaining profits under a recreational property lease did not "present state sovereign interests" to the degree of the "State of

1 Idaho's interest in its submerged lands." Elephant Butte Irrigation Dist. of New Mexico v.
2 Dept. of the Interior, 160 F.3d 602, 612 (10th Cir. 1998); but see ANR Pipeline Co. v.
3 LaFaver, 150 F.3d 1178, (10th Cir. 1998) (holding a suit challenging a state's property tax
4 system was barred by Couer d'Alene).

5 Here, Plaintiffs challenge Arizona's issuance of a Special Land Use Permit allowing
6 the operation of an apiary on the disputed property. [Dkt. 1, p. 4]. Arizona allegedly claims
7 a school trust title in the disputed property. [Dkt. 1, p. 4]. Arizona's interest in school trust
8 title does not implicate the unique interest in submerged lands that was central to the
9 decision in Couer d'Alene. The Young exception to state sovereign immunity allows
10 Plaintiffs to bring this suit against Defendant Winkleman.

11       **B.**    **Failure to Join Indispensable Persons**

12 A person's joinder is necessary to a case if complete relief cannot be afforded
13 among the parties in the person's absence and the person has a legally protected interest
14 in the case. Fed. R. Civ. P. 19(a); Pit River Home & Agric. Coop. Ass'n. v. United States, 30
15 F.3d 1088, 1099 (9th Cir. 1994). The parties do not dispute that the United States and
16 Arizona are necessary persons whose joinder is not feasible due to their respective
17 sovereign immunities.

18 If a necessary person cannot be joined as a party, "the court shall determine
19 whether in equity and good conscience the action should proceed among the parties
20 before it, or should be dismissed, the absent person being thus regarded as
21 indispensable." Fed. R. Civ. P. 19(b). In determining whether a person is indispensable,
22 Rule 19(b) directs the Court to consider to what extent a judgment would prejudice the
23 absent person or the parties, the likelihood of limiting any prejudice, the adequacy of a
24 judgment issued in the person's absence, and whether the plaintiff will have an adequate
25 remedy if the case is dismissed. Defendant Winkleman argues that the United States and
26 Arizona are indispensable persons whose absence from this suit requires dismissal.

27 //

28

### 1.     **The United States**

As an initial matter, Defendant Winkleman asserts that Plaintiffs are judicially estopped from arguing that the United States is not indispensable by the Community's argument in In re Schugg, CV 05-2045-PHX-JAT (D. Ariz.). That argument was unsuccessful, In re Schugg [dkt. 37, p. 3], and thus cannot form the basis for an application of judicial estoppel. See Hamilton State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001) ("This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position.").

Turning to the merits, the Ninth Circuit has held that the United States is not an indispensable party to a case brought by a tribe to protect its tribal lands:

> the rule is clear in this Circuit and elsewhere that, in a suit by an Indian tribe to protect its interest in tribal lands, regardless of whether the United States is a necessary party under Rule 19(a), it is *not* an indispensable party in whose absence litigation cannot proceed under Rule 19(b).

Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251 (9th Cir. 1983); Fort Mojave Tribe v. LaFollette, 478 F.2d 1016, 1017 (9th Cir. 1973) ("Without joining the United States, an Indian tribe may sue in its own right to protect its interest in restricted land."). Recent cases from other circuits have explained that this rule should apply only when the interests of the tribe are aligned with those of the United States. E.g., Spirit Lake Tribe v. North Dakota, 262 F.3d 732, 747 (8th Cir. 2001) ("when the government claims an interest in land that squarely conflicts with the interest of a Tribe, the government's presence in litigation is nearly always required"); Navajo Tribe of Indians v. New Mexico, 809 F.2d 1455, 1473 (10th Cir. 1987) ("In... Puyallup... the interest of the United States was aligned with that of the Indians" and so the United States "was not found indispensable.").

Here, the Community is seeking to protect the tribal lands from encroachments by Arizona and Defendant Clark, thereby protecting the United States' trust title in those lands. The relief sought by the Community would limit Arizona and Defendant Clark's use

of the disputed property, protecting- not clouding- the United States' trust title. The United States is not indispensable to resolving Plaintiffs' claims.[2]

### 2. The State of Arizona

To determine whether Arizona is indispensable to the resolution of this case, the Court will analyze first the effect of a judgment for Plaintiffs and second the effect if Defendants prevail. The nature of the Community's interest and Arizona's interest in the disputed property is central to determining whether this case can proceed in the absence of Arizona. The Community claims the United States granted it the disputed property as reservation land. Arizona claims it was granted the property as school trust land. As discussed below, the parties' rights in the disputed property will be affected by which party was granted the disputed property first.

If the Community had a reservation in the disputed property before Arizona was granted and took the property, Arizona would not take the disputed property until the reservation is extinguished.[3] 43 U.S.C. § 851 (state "await[s] the extinguishment of any such military, Indian, or other reservation and the restoration of the lands therein embraced to the public domain and then tak[es]" the school trust land); New Mexico-Arizona Enabling Act, Pub. L. No. 61-219, § 24, 36 Stat. 557, 572-73 (1910) (applying § 851 to Arizona school trust land). The United States Supreme Court has characterized a state's interest in school trust land held awaiting the extinguishment of a reservation as "the fee of the land... subject to a right of occupancy by the Indians." Minnesota v. Hitchcock, 185 U.S. 373, 389

---

[2] Defendant Winkleman asserts that the United States is indispensable to the resolution of Arizona's counterclaims. Arizona is not a party to this action. Nor has Defendant Winkleman filed any counterclaims on its behalf.

[3] Arizona could have selected other land in lieu of school trust land occupied by an Indian reservation. 43 U.S.C. § 851 (where school trust land is occupied by an Indian reservation,"other lands of equal acreage are also hereby appropriated and granted and may be selected"). The Complaint alleges that Arizona has not selected other land, but "continues... to claim school trust title to Section 36." [Dkt. 1, p. 8]. Had Arizona selected other land, it would have no claim to section 36 and thus no legal interest in this case.

1 (1902); see also Bennett County v. United States, 394 F.2d 8, 11 (8th Cir. 1968) ("The federal
2 government possesses the unquestioned power to convey the fee to lands occupied by
3 Indian tribes, although the grantee takes only the naked fee and cannot disturb the
4 occupancy of the Indians."). If, as alleged, the Community's reservation preceded Arizona's
5 taking of the school trust land, Arizona would hold fee title to the disputed property
6 subject to the Community's right to occupy the land.

7 Plaintiffs' requested relief, an injunction barring Defendant Clark from using the
8 apiary and barring Defendant Winkleman from authorizing future encroachments on the
9 disputed property, would leave Arizona's fee title undisturbed, remaining subject to the
10 Community's rights. Such a decision would not prejudice Arizona, who would not be
11 bound by a decision issued in its absence. See Fort Mojave, 478 F.2d at 1017 ("United
12 States will not be bound by any determination made in a suit to which it is not a party").
13 Such a decision would be adequate as to Plaintiffs because it would prevent further
14 encroachments authorized by Defendant Winkleman, who as Arizona's Land Commissioner
15 exercises the state's authority over the disputed property. Ariz. Rev. Stat. § 37-132
16 (detailing Land Commissioner's powers, including issuing "permits for short-term use of
17 state land," (B)(6), and making "long-range plans for the future use of state lands," (A)(3));
18 see also Lassen v. Arizona, 385 U.S. 458, 460 n.1 (1967) (Arizona's "Land Commissioner is
19 apparently a substantially independent state officer... with custody of the [school] trust
20 lands.").

21 By contrast, if the disputed property was granted first to the School as school trust
22 land, Arizona would arguably hold title free of the Community's rights accorded by the
23 reservation. In such a case, the Community may still retain a right of occupancy based on
24 aboriginal title or some other claim of right. No prejudice would result if it was found that
25 the Community did not have a right to occupy the property. Such a result would be
26 pursuant to a judgment issued in a case filed by the Community.

27
28

Based on those possible resolutions, this case will not result in extinguishing Arizona's title to the disputed property, at most Arizona's title would be subject to the Community's right to occupy the property. Resolution of this case does not require Arizona's presence because Defendant Winkleman, Arizona's Land Commissioner, can properly represent Arizona's interest in the state lands, as he is required to do by Ariz. Rev. Stat. § 37-132. In these circumstances, Arizona is not indispensable to this case.

### C.  Extinguishment of Aboriginal Title

Defendant Winkleman argues that the Community's claim that its aboriginal title secures it the right to occupy the disputed land must be dismissed because the Community's aboriginal title to the disputed property has been extinguished. To demonstrate that aboriginal title has been extinguished, Defendant Winkleman cites <u>Gila River Pima-Maricopa Indian Community v. United States</u>, 24 Ind. Cl. Comm. 301 (1970), and <u>Pima-Maricopa Indian Community v. United States</u>, 27 Ind. Cl. Comm. 11 (1972). Those cases recognize the extinguishment of the Community's aboriginal title to the lands described in the Indian Claims Commission's Finding 23. <u>Pima-Maricopa Indian Community</u>, 27 Ind. Cl. Comm. at 11. Finding 23 is a metes and bounds description of land taken from the Community. Determining whether the disputed property is within the land described in Finding 23 is a factual matter the Court cannot decide based on the present record.

Accordingly,

**IT IS ORDERED** that Defendant Mark Winkleman's Motion to Dismiss [dkt. 13] is **DENIED**.

DATED this 22nd day of May, 2006.

*Earl H. Carroll* (signature)
Earl H. Carroll
United States District Judge